The last case on for argument today is Reches v. Morgan Stanley & Co. And today I ask this court as the first item to vacate the order from the district court that was written in the August 29, 2016 decision. In that decision, the district court acted sua sponte to time bar my pension claim without affording me notice and without first affording me a chance to be heard. The district court violated my right for due process as guaranteed by the Fifth Amendment. I was never given a day in court. I never met the judge. I never had a chance to speak about anything. This disregarded the Supreme Court's ruling. That ruling was affirmed by this court, was it not? Okay. You may think that it was wrong, but it's true that that was appealed and you raised that issue and the court rejected it. No, Your Honor, I'm sorry. The court, this court ignored the due process violation. There were multiple issues that we brought up with the court. There were issues whether sua sponte on statute of limitations is valid. And that's where this court ruled that if it's on the face of the complaint, then they found a case where you You're saying that that was incorrect, that what the court said, the court said, excuse me, appeared on the face of the complaint. Correct. I understand that you think that was incorrect. Correct. I disagree with that as well. However, they didn't address the fact that I wasn't given any notice. So whether or not No, they did. They said that it didn't matter. No, no, no. No, that's not what the order said. All the order said, all the decision in 2017 addressed was whether sua sponte and statute of limitations can go together. It did not address doing sua sponte without giving notice to the other party. And did you raise that in your rehearing? I raised that and it was totally ignored. So you're saying that we should now say that the prior panel of this court got that wrong. Correct. And you understand that there is something called res judicata. That is that once a court has decided a case, it's over. You can appeal to the next level. You can go to the Supreme Court and ask them to fix it. But once it's done, it's done. It wasn't done explicitly. It was done implicitly, meaning the court just ignored the fact that it was done without due process. You raised the issue in your motion for reconsideration, correct? Yes. And you got an order back that said your motion is denied. Correct. That's what we call considering the issue. That was your opportunity and we denied it. We didn't address nor do we hardly ever address point by point issues raised in motions for reconsideration. So I am sorry to tell you that you've had your day in court and you've had other what I call bites at the apple to remind us what you think we didn't get right, and we have addressed those with the subsequent orders. I believe those orders did not address them at all. I understand what you believe, but I'm explaining to you that they did address them. You might not like how they were addressed, but they were addressed. There was no mention at all about due process. We don't go point by point through issues raised when we say most often in response to motions for reconsideration, denied. But isn't due process something that cannot be taken away from a person? Isn't that something that is inherently by the Constitution given to every human being in the United States? I think we got due process wrong, and the remedy for that is to ask the Supreme Court if we did. Can I just ask, is there anything in your brief that says what you would have said if given your day in court? Yes. Okay, so what is that since you're here? What is the argument that you would have made if the district court had said, it looks to me like this is time-barred, but come on in and tell me why I'm wrong. Tell me why the court was wrong. Okay, so there are two arguments I have. The foundation upon which the statute of limitations was raised was an assumption that when I became a regular employee in 1990, I must have received, they're called SPDs, summary plan documents or some other document. At least you had access to it. You could have asked. Yes. I could have gotten it, and it was available and all that. Number two, if I would have gotten it, those hypothetical documents, if they really existed, then I would have seen in those documents that during the years, the contested years, that I was un-I was ineligible for pension. You were or were not eligible? I beg your pardon? You said you were eligible or were not eligible? No. The court said you were. The court said that if I would have had those documents, then I would have understood that I was ineligible. So therefore, the court said, look, I'm assuming you got the documents. I'm assuming you read them, and you knew you were ineligible in 1990. So it was starting the clock in 1990, and now it was 20, whatever. So you had the you had access to documents, whether you took advantage of it or not. I did not. There was no access to any SPDs at all in 1990 until, like, 2010 or so. There was no access at all to them. When you say there was no access? Meaning that you didn't know that something like that existed? And they never hand them out to anybody? They never made any reference that, oh, here are SPDs. They're stacked up over there. Just take them? Never at all. But if you wanted to know whether you were eligible for the pension benefits or not, you could have found out by looking into the subject at that point. That's what the issue is. At the point, okay, so at the point, at that time, I had no clue. I wasn't looking to retire. It was 1990, and I was a little bit younger. And there was no reason for me to look into whether or not in 2015, when I retire, I'll be eligible. I mean, I think I'm afraid that what the law is is that if you have access to that kind of information, by access I don't mean that you actually read it, got it, read it, looked at it, figured it out, parsed it all out. You either care whether you're on the pension plan or you don't. But you could have, if you cared, to know whether you had the pension benefits. There's a whole set of documents that describes what the plan is, and you didn't take advantage of that opportunity. Now, that's sad, but I don't understand why, now that we've gone through all of this, if you had had an opportunity to present that argument to the district court, the district court would have said, sorry, statute of limitations still applies. Your Honor, can I say two things? Number one is that from the laws that I read in ERISA, they state that it's not even enough for the company to put them in the bathrooms. You have to make sure that every employee got it. So their requirement is not just having it someplace, although I don't know anybody who saw one of these documents in those days. Number one, I'm sorry, number one. Number two is that those documents, I argue, would have supported my claim that I was eligible. If I would have had those documents, they would have showed me eligibility. The reason is as follows. The other side, Morgan Stanley presented to the case the 2004 plan documents. They didn't present anything from back in the 90s and the 80s when I started working at Morgan Stanley. The 2004 plan document is divided into two parts, going forward from 2004 and everything before 2004. Going forward from 2004 and further, there is a new eligibility criteria that you have to be a W-2 employee. That criteria does not exist in the section that talks about the pre-2004, which means that pre-2004 there was no requirement to be a W-2 employee. 1099 employees were able to get pension. And then even the SPD, which I found in 2012, talks about in 2004 that if you're not getting paid like a W-2, you have until July 2004 to sort of get your pension under 1099. So my argument is to the Court, let's examine those documents. And you'll see that in those documents, even if they gave them out, and even if I saw them, and even if I had them, I would have said, oh, I'm getting pension. When I told that to the Court, the Court said, second bite at the apple. I said, what do you mean? All this that I'm telling you now is written in my opposition in June 2016, three months before your decision. So what second bite at the apple is this? I wrote this three months before you wrote the decision. No answer. No answer. So what is a person supposed to do? And that was you had filed that before you had your first appeal from that decision, obviously, because it preceded the decision. So the district court didn't just act sui spante to raise the statute of limitations. They poured salt on that wound. They falsified and said that the other side raised the statute of limitations. Now, I can't call the judge up and say, sir, you know, it's a mistake. There's no such thing. There's only one way to communicate. It's called a reconsideration letter. So I wrote a reconsideration letter saying apparently there's been a mistake because the other side did not raise statute of limitations. No answer. Second time. Third time. Now I'm called a refusenik because I don't want to accept what the court is saying. So I get shafted by not getting my due process. When I try to point it out, it falls on dead ears, and I'm called a refusenik. So what's a person supposed to do? So we appealed it. I went to one appeal, to another appeal. And it's been pretty much the same result up until now. Nobody talks about the due process. That does okay. I know what you're saying. But nobody says a word about it. What this Court did write in the most recent one, the most recent decision in September 2019, no, 18. I'm getting really mixed up. 2018, was that, oh, yeah, you didn't bring anything up in your opposition about what you're arguing that the documentation helps you out. I said, what do you mean I didn't bring it up? Here's the page. Here's the paragraph. How can you say I didn't bring it up? You might argue with me. You might disagree with my interpretation of the documentation. That's fine. We can go there. But to say I didn't bring it up when I'm pointing you to the documentation, to the page, to the paragraph, and you're telling me that it's not there. So what's a human being supposed to do? So I sort of go into the Supreme Court and, yeah, it takes a year to get here. It'll take me 10 years to get into the Supreme Court. So I tried again. And it's kind of funny that the district court keeps on sort of like screaming at me. I told you to get out of here. Don't come back every time. But they kind of, seems like they feel that they really didn't do their job, and they don't tell me that, you know, you've been wrong. It's just that we already got rid of you once. Don't come back. That's been always. Sometimes courts do get things wrong, alas. But the rule is everybody gets one shot. You take your shot. You present your arguments. If you lose, you lose. Courts can't go back and reinvestigate prior cases over and over again, or it would never end. Everyone would be able to come back and challenge the result of a case by saying, oh, you got this wrong. Go back and look at it again. That's not how it works. We do have in mind your arguments. We do have in mind your arguments. Your time is well over the red light. And thank you. No, no, don't. We kept you up here, and we were asking you questions. So thank you. We'll hear from Mr. Holtzman if he has anything to say. And what is my recourse at this point? Just the Supreme Court? No, to wait for a decision from this board. And if you don't like that, there is a body that exists to correct our errors. Okay. Thank you, Your Honor. Thank you, Your Honors. Thank you, Mr. Rankin. Good afternoon, Your Honors, and may it please the Court. I'm Robert Holtzman from Kramer Levin, the appellee Morgan Stanley. I think we fully briefed these issues several times before this Court. I would briefly note that this Court has already made determinations with respect to all of the arguments that Mr. Reches has made today, including with respect to his concerns about the use of the 2004 plan. In the second appeal to this Court on the previous Rule 60B motion, the Court specifically stated the District Court did not err by denying reconsideration because the 2004 plan would not have altered the District Court's decision. And indeed, from the very first appeal, the Court has looked very carefully at the sua sponte raising of this and made a determination in accordance with prior precedent and consistent principles that there was no violation by doing that no improper act. Raising this on what is now, I believe, the eleventh motion for reconsideration or appeal coming from the District Court's original determination is improper. It's the prototypical misuse of Rule 60B, which specifically is not permitted to be used, to relitigate issues already decided. And therefore, we would request that the Court affirm. I'm happy to answer any questions the panel may have. And otherwise, we'll rest our case. I think that's it. Thank you, Your Honor. Thank you, Your Honors. We'll reserve decision in this case and get a decision out shortly. Thank you. Thank you, Your Honors. The final case on for the calendar, on the calendar, is Robles v. Barr.  So I will ask the Clerk, please, to adjourn the Court. The Court stands adjourned. Thank you.